## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WALTER FONTROY
1127 16th St., NE,
Washington, DC 20002

Plaintiff,

     v.

GOVERNMENT OF THE DISTRICT OF
COLUMBIA

SERVE: Mayor Muriel Bowser
Designee:  Darlene Fields
441 4ᵗʰ Street NW
Suite 600 South
Washington, D.C. 20001
202-724-6507

SERVE: Karl Racine, Attorney General
Designee: Darlene Fields or Tonia Robinson
or Gale Rivers
Attorney General for the District of Columbia
441 4th Street, N.W., 6th Floor South
Washington, D.C. 20001
202-724-6295

and

FREDERICK ONOJA
1805 Bladensburg Road, NE
Washington, DC 20002

Defendants.

Civil Action No:

## COMPLAINT

### Complaint For Money Damages With Jury Demand

1.      This is an action for a judgment for money damages for assault and false arrest under the

common law of the District of Columbia and unreasonable arrest and excessive force and fabrication of

evidence under Section 1983 brought by plaintiff Walter Fontroy (also known as Walter Paige) against

defendants the Government of the District of Columbia (hereinafter the "District of Columbia" or the

"District") and Frederick Onoja, an officer of the District of Columbia Metropolitan Police Department

("MPD").

2.      The District injured Mr. Fontroy in the same incident in which the District and Officer Onoja

injured Mr. Young whose case is before this Court. Young v. District of Columbia et al, 16-1046-TFH.

Parties

3.       Plaintiff Mr. Fontroy is an adult and a longtime resident of the District of Columbia area.

4.      Defendant government of the District of Columbia is a municipal corporation capable of being

sued under D.C. Code § 1-102.

5.      Defendant Frederick Onoja is an employee of the District of Columbia and a member of the

MPD.

6.      At all times defendant Frederick Onoja was acting within the scope of his employment and

defendant Frederick Onoja was acting pursuant to a policy of the District of Columbia.

7.      For purposes of § 1983 this complaint names defendant Frederick Onoja in his individual

capacity.

Factual Allegations

Introduction

Page 2

8. On about September 2, 2015 at about 9:30 pm in front of Stanton, a neighborhood convenience store at 1044 Bladensburg Road, N.E. in Washington, DC, Defendant Onoja without provocation tackled Mr. Fontroy from his blind side and threw him to the ground and put his knee in his back and thereby injured Mr. Fontroy physically, mentally, and emotionally.



9.

10. There was no provocation for tackling Mr. Fontroy and there was no need for force at all.

11. Mr. Fontroy did not resist.

12. Then, defendant Onoja falsely arrested Mr. Fontroy on trumped up charges of APO (assaulting a police force), D.C. Code § 22-405, and tampering with evidence, D.C. Code § 22-723.

13. Officer Onoja also swore out a statement falsely claiming that Mr. Fontroy tampered with evidence and provided false evidence to the US Attorney who, in reliance on Officer Onoja's sworn statement, then charged and prosecuted Mr. Fontroy for tampering with evidence, D.C. Code § 22-723, 1803, and APO, D.C. Code § 22-405.

14.     There was no probable cause to support the arrest for any offense.

## Officer Onoja's arrest of Mr. Fontroy

15.     This arrest, tackling, and trumped up tampering charges grew out of Officer Onoja's beating and false arrest of another man, Nathan Young.

## Testimony and video evidence adduced at trial.

16.     On September 2, 2015, Mr. Fontroy, and Mr. Young, and some others were hanging out near a neighborhood convenience and liquor store, Stanton Liquors, in the 1100 block of Bladensburg Road, NE., which is near to where Bladensburg Road intersects with H Street at Starburst Plaza.

17.     The store has video cameras that monitor the drive that runs alongside the right hand side of the store (facing the store) and the front of the store.

18.     The MPD did not obtain and preserve and disclose any video to Mr. Fontroy's criminal defense lawyer.

19.     But, a concerned citizen did video much of the incident including Officer Onoja's assault on Mr. Fontroy.The neighborhood is a neighborhood in transition. It is being rapidly gentrified. The city recently completed construction of a trolley along H Street, NE.

20.     Officer Onoja's normal patrol area is the 800 block of Bladensburg Road Northeast (where Bladensburg Road intersects with H Street at Starburst Plaza) to the 1000 block of Bladensburg Road Northeast which includes Stanton.

21.     Officer Onoja riding his bike on the streets and sidewalks of the area is a neighborhood fixture.

22.    Officer Onoja himself says that he frequently has confrontations with the residents, and they often curse and shout at him.

23.    Officer Onoja approached the group behind the store which included Mr. Young and Mr. Fontroy.

24.    Officer Onoja came to this country as a grown man and he frequently does not understand what native Washingtonians are saying when they speak.

25.    In this case he did not understand what Mr. Fontroy and the others were saying and he construed, or at least testified under oath that he construed, their protests and pleas as threats.

26.    Mr. Fontroy has lived in the area all of his 43 years and he is the caretaker for his 85 year old uncle who also lives there.

27.    Officer Onoja testified at Mr. Fontroy's trial (on the APO and tampering with evidence charges) that this incident began when he saw Mr. Young with an open can of beer standing behind the store.

28.    However, Officer Onoja conceded on cross examination during the criminal trial that actually he never saw Mr. Young touch the can of beer.

29.    Nonetheless, Officer Onoja told Mr. Young to pick it up, pour it out, and leave the alley.

30.    Mr. Young did not, so Officer Onoja arrested him for "POCA" ("Possession of Open Container of Alcohol") because Mr. Young would not leave the alley. D.C. Code § 25-1001(a)(1); D.C. Code § 25-101(35).

31.    After arresting Mr. Young Officer Onoja dragged him out to the sidewalk in front of the store and Officer Onoja threw Mr. Young face-down on the sidewalk.

32.     Mr. Young lay face down on the sidewalk with his hands handcuffed behind his back and Officer Onoja crouched down beside him pulling up on the handcuffs.

33.     Mr. Fontroy, Ms. White, and several other residents were enraged at Officer Onoja's brutal and unfair treatment of Mr. Young.

34.     They were extremely distraught and upset.

35.     They protested to Officer Onoja his arrest and treatment of Mr. Young and acted in defense of Mr. Young to protect him from further brutality and unfair treatment at the hands of Officer Onoja.

36.     Neither Mr. Fontroy, Ms. White, Mr. Young, or anyone else in the group ever said words inciting anyone to hurt or threaten Officer Onoja nor themselves threatened Officer Onoja.

37.     After about two minutes numerous police cars swarmed the scene.

**Officer Onoja's claim that Mr. Fontroy tampered with evidence by throwing away Mr. Young's beer can.**

38.     What started this whole incident was Officer Onoja's order to Mr. Young to pick up and throw away a can which Officer Onoja believed was open.

39.     Officer Onoja swore out a statement saying that that the beer can was left in the alley when he brought Mr. Young out, and that he saw Mr. Fontroy pick it up and walk off with it, and empty it out while Officer Onoja was on the sidewalk crouched down with Mr. Young, and hide the can.

40.     Officer Onoja testified to the same facts at Mr. Fontroy's trial.

**Officer Onoja came up behind an unresisting Mr. Fontroy and tackled him to the ground.**

41.     As the back-up arrived Mr. Fontroy was standing about 20 feet away from Officer Onoja off the

sidewalk in the street. He did not attempt to flee when the back up arrived.

42.     As soon as another officer took over restraining Mr. Young Officer Onoja leapt up and charged

at Mr. Fontroy and threw him down on the sidewalk.

43.     Officer Onoja conceded on cross in Mr. Fontroy's trial that Mr. Fontroy was not attempting to

flee, nor did he offer any resistance whatsoever.

44.     Under oath, Officer Onoja described the tackle as, "I ordered him to the ground, and he went to

the ground, and I placed him in handcuffs while he was on the ground."

45.     Under oath, Officer Onoja further described the tackle as, "I did not take him to the ground. I

ordered him to get on the ground, and he was going to the ground, and he got on the ground, and I put

him in handcuffs, sir."

**The trial court's findings of fact based solely on the concerned citizen's video not Officer Onoja's**

**testimony.**

46.     The trial court did not credit any aspect of Officer Onoja's testimony that was not supported by

the video tape.

47.     For example, even though Officer Onoja clearly testified that, "I observed ... Mr. Page pick [the

beer can] up and walked off with it ...[e]mpty it out and place it on a, beside the rear tire of a, of a vehicle

that was parked by, nearby," the trial court nonetheless found that "I just don't think I have sufficient

evidence to warrant that [finding that Mr. Fontroy emptied the beer can and threw it away] because the

video shows him [Mr. Fontroy] on the street."

48.     Moreover, the trial court noted that the video contradicted Officer Onoja's testimony that Mr.

Fontroy got on the ground by himself.

49.    The trial court did not believe Officer Onoja's "testimony that he asked the defendant to get on the ground when it appears quite clear from the video that he was taken to the ground."

50.    With respect to the APO charge, the trial court found that "So, I'm gonna believe the Government has established, **based on the video**, guilt beyond a reasonable doubt of performing assault on a police officer."

51.    On the tampering charge, the trial court found, "With respect to the tampering with physical evidence, I just don't think I have sufficient evidence to warrant that because the video shows him on the street."

52.    The trial court acquitted Mr. Fontroy on the tampering charge.

53.    At the end of the day, of the four people involved in the incident, Officer Onoja was the only one whose sworn testimony in a criminal trial in Superior Court a Superior Court judge did not believe.

54.    And yet, Officer Onoja is the only one who did not get arrested and charged.

55.    Mr. Young, Mr. Fontroy, and Ms. White all got arrested, charged, and prosecuted on the say so of Officer Onoja.

56.    Mr. Young was arrested for POCA and released on citation.

57.    The US Attorney charged and prosecuted him in Superior Court docket in number 2015 CDC 012032 on Officer Onoja's sworn statement.

58.    Mr. Young successfully completed a diversion program and community service and the

government *nolle'd* the case on December 17, 2015.

59.     Ms. White was arrested and charged with APO and held in jail for about a month. Ultimately the government dismissed her APO charge as part of a plea agreement in another case.

60.     The MPD arrested Mr. Fontroy on APO and tampering charges based on Officer Onoja's sworn statement.

61.     Officer Onoja assaulted Mr. Fontroy for no justifiable reason.

62.     About five or six police cars and probably ten police officers were on the scene. Numerous citizens were standing behind a fence talking.

63.     Even though the MPD charged Mr. Fontroy with APO and even though Officer Onoja was both the complainant and the only government witness still none of the police officers who arrived on the scene made any attempt to canvass the crowd to ask them their version of events even though Metropolitan Police Department General Order 701.3 mandates that "Members on the scene of the assault shall ... (3) Immediately canvass the area to locate all witnesses to the assault and (4) Have each witness complete a PD Form 119 (Complainant/Witness Statement) regarding events surrounding the assault [see GO-SPT- 401.01 (Field Reporting System)]."

64.     Nor did the MPD obtain any video from the stores cameras or from passing Metro buses or if they did they did not produce the video to Mr. Fontroy's criminal defense laywer.

65.     At the end of the day, Mr. Fontroy was acquitted of tampering, Mr. Young successfully completed diversion and the government *nolle'd* his case, and Ms. White's APO interfering charge was dismissed as part of a plea agreement.

66.     The only person a Superior Court judicial officer disbelieved was Officer Onoja testifying under oath but the only people arrested and prosecuted were Ms. White, Mr. Young, and Mr. Fontroy.

67.     The damage Officer Onoja did to community trust in the police is incalculable.

68.     Recent news reports show the damage police officers can do to a community by brutalizing and falsely arrested its members.

### Defendant Onoja is an open and notorious violator of civil rights.

69.     Defendant Onoja is an open and notorious violator of civil rights of the people in the District of Columbia whom he polices.

70.      On numerous occasions defendant Onoja has arrested and pressed trumped up charges against young black men and other people without probable cause.

71.     On numerous occasions defendant Onoja has harassed and even arrested people, especially young black men, without probable cause for alleged violations of the District's incommoding statute. D.C. Code § 22-1307(a).

72.     The incommoding statute purports to criminalize conduct when it results in "crowding, obstructing, or incommoding" the sidewalk or entrances to public or private buildings, and the person refuses to move on when so ordered. D.C. Code § 22-1307(a).

73.     Defendant Onoja used the statute to clear the sidewalks in his patrol area of young black men who have done nothing wrong.

74.     For example, Officer Onoja and a partner arrested Mr. Bugg Bey for incommoding even though Officer Onoja admitted in his deposition in the civil trial that he knew Mr. Bugg Bey was standing on private property.

75.     In the civil case in Superior Court Judge Dixon denied Officer Onoja's motion for summary judgment on qi grounds and the District ultimately settled the case.

76.     On August 25, 2015, again in front of Stanton, Officer Onoja arrested Joseph Alexander for continuing to walk up and down the street after Officer Onoja told him to leave the area for loitering.

77.     The District has stopped enforcing the incommoding statute because it is unconstitutional.

78.     Officer Onoja then began using the "POCA" statute as his favored tool for making false arrests. D.C. Code § 25-1001(a).

79.     Officer Onoja makes most of his arrests on the ¼ mile strip of Bladensburg Rd NE, Washington, DC 20002 starting from the intersection of H Street, NE and Bladensburg Rd, NE.

80.     This area has been a hot bed of gentrification in the last ten years.

81.     It appears that Officer Onoja is motivated at least in part in assisting developers wishing to exclude long-time residents from the area.

82.     This arrest and beating grew out of Defendant Onoja's unconstitutional attempts to make Mr. Fontroy and Mr. Young to leave an area where Defendant Onoja did not want him to be.

83.     Officer Onoja has assaulted and trumped up charges against other people in the area and trumped up false charges against other people in the area on quality of life charges such as POCA and

incommoding (23 D.C. Code § 1307) to clear the area's long-time residents from the area as part of the gentrification process.

### The MPD has not meaningfully disciplined Defendant Onoja.

84.     The MPD has not disciplined Defendant Onoja by placing him into non-contact status.

85.     Nor has the District meaningfully disciplined Defendant Onoja in any other way.

### The District has ratified Defendant Onoja's conduct in this incident and in the incidents described above by not disciplining him and continuing to allow him to make bad arrests.

86.     The District has ratified Defendant Onoja's conduct in this incident and in the incidents described above by not disciplining him.

87.     He is still in the field making arrests, operating without any decent restraint, totally beyond the pale of any acceptable police behavior.

88.     Just last month he made a stop of a Black man on a pretextual stop for POCA (position of an open container of alcohol) and parlayed that pretextual stop into an arrest for possession of a tiny amount of a controlled substance and possession of paraphernalia (a straw).

89.     The MPD and the prosecutors have suppressed information about Officer Onoja in cases in which Officer Onoja is a witness in criminal prosecutions in the District of Columbia Superior Court instead of disclosing it to defendants facing charges pursuant to their Brady obligations.

### Claim 1 – Common law assault claim against individual defendant Onoja

90.     Mr. Fontroy adopts by reference the preceding paragraphs as if fully set forth herein.

91.     Defendant Onoja tackled Mr. Fontroy threw him on the ground and put his knee into Mr. Fontroy's back and beat him and thereby injured him physically, mentally, and emotionally.

92.     The assault of Mr. Fontroy was against his will and was not lawful or justified.

93.     As a direct and proximate result of this assault, Mr. Fontroy suffered loss of liberty and physical injuries and emotional distress.

## Claim 2 – Common law assault claim against District of Columbia

94.     Mr. Fontroy incorporates herein the preceding paragraphs.

95.     The District is liable in **respondeat superior** for the conduct of defendant Onoja in assaulting Mr. Fontroy against his will and without justification.

96.     At all relevant times its agents, its officers named above, were acting within the scope of their employment pursuant to an official policy or practice of the Mayor and the City Council.

97.     As a direct and proximate result of this assault, Mr. Fontroy suffered loss of liberty and physical injuries and emotional distress.

**Count 3 – 42 U.S.C. § 1983; Fourth Amendment claim against defendant Onoja for unreasonable force**

98.     Mr. Fontroy adopts by reference the preceding paragraphs as if fully set forth herein.

99.     Defendant Onoja assaulted Mr. Fontroy and used force against him when no force was justified in violation of his Constitutional rights under the Fourth Amendment.

100.     The use of force against Mr. Fontroy was against his will and was not lawful or justified.

101.     Defendant Onoja was not justified in tackling Mr. Fontroy and throwing him to the ground and putting his knee into Mr. Fontroy's back and continuing to beat Mr. Fontroy because he did not resist.

102.     In tackling Mr. Fontroy and throwing him to the ground and putting his knee into Mr. Fontroy's back and continuing to beat Mr. Fontroy, Defendant Onoja acted intentionally or maliciously, unjustifiably, and unreasonably in violation of Mr. Fontroy's well-established right under the Fourth Amendment to the United States Constitution to be free from excessive force.

103.     As a direct and proximate result of this assault, Mr. Fontroy suffered loss of liberty and physical injuries and emotional distress.

**Count 4 – 42 U.S.C. § 1983; Fifth Amendment claim against defendant Onoja for fabrication of evidence**

104.     Mr. Fontroy adopts by reference the preceding paragraphs as if fully set forth herein.

105.     Officer Onoja falsely swore in a police report and a "Gerstein" (sworn probable cause affidavit) and a criminal complaint that Mr. Fontroy poured out a can of beer belong to Mr. Young and hid the can in an attempt to hide or destroy what ono falsely claimed was evidence of Mr. Young's violation of the POCA statute.

106. Officer Onoja supplied the false documents supported by false oral statements to the prosecutor.

107. Officer Onoja even fabricated the probable cause facts on this claim.

108. The US Attorney relied on Officer Onoja's fabrications initiate a prosecution of Mr. Fontroy for tampering of evidence.

109. Officer Onoja's false statements effectively hijacking the prosecutor's independent judgment and causing the prosecutor to advance a case based on the fabrications.

110. By doing so Officer Onoja violated Mr. Fontroy's right to a fair trial under the 5th Amendment.

111. Officer Onoja's fabrication of evidence resulted in a deprivation of Mr. Fontroy's liberty because the MPD arrested him and the US Attorney in reliance on Officer Onoja's fabrications prosecuted Mr. Fontroy four four months and tried Mr. Fontroy..

112. As a direct and proximate result of this assault, Mr. Fontroy suffered loss of liberty and physical injuries and emotional distress.

### Count 5 – 42 U.S.C. § 1983; Municipal liability claim against defendant District of Columbia

113. Mr. Fontroy adopts by reference the preceding paragraphs as if fully set forth herein.

114. The District has a custom or practice of failing to discipline defendant Onoja which can be inferred from evidence of repeated constitutional violations for which defendant Onoja was not discharged or reprimanded

115. Moreover, by keeping defendant Onoja in the field with knowledge of his unconstitutional conduct without disciplining him the District has ratified his conduct.

116.    The District's custom and ratification was the moving force behind Mr. Fontroy's suffering loss of

liberty and physical injuries and emotional distress.

## RELIEF DEMANDED

Mr. Fontroy respectfully requests that this Court grant him the following relief:

A.    Enter a judgment in favor of plaintiff.

B.    Enter a judgment awarding plaintiffs attorneys' fees and costs incurred in bringing this action

under 42 U.S.C. § 1988; and

C.    Grant such other relief as this Court deems just and proper.

| | |
|---|---|
| Respectfully submitted,<br><br>/s/ William Claiborne<br>WILLIAM CLAIBORNE<br>D.C. Bar # 446579<br><br>Counsel for Mr. Fontroy<br><br>2020 Pennsylvania Ave, NW<br>#395<br>Washington, DC  20006<br>Phone 202/824-0700<br>Email claibornelaw@gmail.com | |

## JURY DEMAND

Plaintiffs demand a jury of six as to all claims so triable.

/s/William Claiborne_
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Plaintiff